UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEON KENNEDY,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action No. 17-14206

HON. GEORGE CARAM STEEH
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

_____/

## REPORT AND RECOMMENDATION

Plaintiff Deon Kennedy ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #18] and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

## PROCEDURAL HISTORY

On November 4 and 11, 2015 respectively, Plaintiff filed applications for DIB and Supplemental Security Income ("SSI") (under Titles II and XVI respectively of the Social Security Act) alleging a disability onset date of July 2, 2009 (Tr. 182, 184). Upon pre-hearing review, on November 19, 2015, Plaintiff was deemed eligible for SSI as of his 50th

birthday of November 3, 2015[1] (Tr. 73-75).  Notwithstanding the award of SSI as of his 50th birthday, Plaintiff filed a  request for an administrative hearing for consideration of whether he was disabled prior to the December 31, 2013 expiration of entitlement to DIB[2] (Tr. 15). On November 21, 2016, Administrative Law Judge ("ALJ") Donald G. D'Amato presided at a live hearing in Livonia, Michigan (Tr. 28).  Plaintiff, represented by Amanda Kelly, testified, as did Vocational Expert ("VE") Luann Castellana (Tr. 32-39, 39-44).  On February 15, 2017, ALJ  D'Amato found that Plaintiff was not disabled at any time between July 2, 2009 and December 31, 2013 (Tr. 15-24).  On October 27, 2017, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final agency decision on December 28, 2017.

---

[1] The finding that Plaintiff was disabled as of his 50th birthday was made based on an earlier July 3, 2013 decision by another ALJ that Plaintiff was limited to sedentary work (Tr. 73-85).  Plaintiff, 48 at the time of the decision, was deemed non-disabled. *Id.*  However, under Medical–Vocational Rule 201.14, an individual closely approaching advanced age (50-54) with a high school education, no transferrable skills, and a limitation to sedentary work generally directs a finding of disability. *Id.* "Individuals approaching advanced age . . . may be significantly limited in vocational adaptability if they are restricted to sedentary work.  When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains." 20 C.F.R. part 404, subpart P, App. 2.  Thus, based on the July 3, 2013 decision, Plaintiff was entitled to SSI as of his 50th birthday.

[2] While the SSA awards DIB to disabled persons based on their past earnings and payment of social security taxes pursuant to Title II of the Social Security Act, 42 U.S.C. § 423,  SSI is provided to disabled individuals on the basis of financial need, pursuant to Title XVI of the Social Security Act. *U.S. v. Smith*, 294 F.Supp.2d 920, fn 2, (E.D.Mich.2003); 42 U.S.C. § 1382.

## **BACKGROUND FACTS**

Plaintiff, born November 3, 1965, was 51 when ALJ D'Amato issued his decision (Tr. 24, 182). He completed high school and one year of college and worked previously as a press operator and production associate (Tr. 215). He alleges disability as a result of degenerative disc disease, arthritis, diabetes, hypertension, glaucoma, neuropathy, hyperlipidemia, and sleep apnea (Tr. 214).

### **A. Plaintiff's Testimony**

*At the November 21, 2016 hearing, the ALJ directed Plaintiff to testify as to his condition prior to the date last insured for DIB of December 31, 2013* (Tr. 32). *Plaintiff's testimony pertains to his condition before the end of 2013 rather than at the time of hearing.*

Plaintiff stood 5' 11" and weighed 370 to 380 pounds (Tr. 32). He experienced fibromyalgia, diabetes mellitus with the complication of neuropathy, sleep apnea, hypertension, low back problems, and ulcers (Tr. 32). On a scale of 1 to 10, he generally experienced level 6.5 to 7 back pain without medication and 4 to 5 with medication (Tr. 33). He could sit for up to 40 minutes and stand for 20 before requiring a position change (Tr. 33). He could walk for a "city block" (Tr. 34). He climbed stairs with the help of the rail (Tr. 34).

On a typical day, he would arise, take a shower, prepare a meal, help his mother with household chores, and do laundry (Tr. 35). His exertional abilities were compromised by neuropathy of the lower extremities causing pain, sores, cramping, and skin infection (Tr. 36). He coped with condition by using Norco and wrapping his feet (Tr. 36). Norco caused the side effect of drowsiness requiring three to four naps each day (Tr. 36-37). His back pain was relieved by reclining (Tr. 37). He did not experience memory problems (Tr. 38). On a bad day, he would experience constant pain, cramping, and irritability (Tr. 38). He experienced three bad days a month (Tr. 38).

    **B.    Medical Evidence[3]**

### 1.    Treating Sources

July 2, 2013 ophthalmological records note that Plaintiff was encouraged to get frequent glaucoma checks (Tr. 263). March, 2014 ophthalmological records indicate that the condition was stable (Tr. 264).

As to Plaintiff's general health, June 10, 2013 treating records note that the condition of diabetes was well controlled (Tr. 420). Plaintiff reported occasional muscle cramps and chronic low back and knee pain (Tr. 420). He appeared in no acute distress (Tr. 420). In October, 2013, Plaintiff reported "severe" lower extremity pain (Tr. 419). X-rays of the the hips and lumbar spine were normal (Tr. 419). The diabetes and hyperlididemia were deemed well controlled (Tr. 419). Treating notes from the same month note that Plaintiff was morbidly obese, pleasant, alert, fully oriented, and able to get on and off the examining table without difficulty (Tr. 735). Plaintiff exhibited full muscle strength in the lower extremities (Tr. 735). An MRI of the lumbar spine from the same month showed a disc bulge at L5 with neuroforaminal narrowing (Tr. 418). The next month and in December, 2013, epidural injections were performed without complications (Tr. 737-744).

### 2. Non-Treating Sources

In October, 2015, Myung Ho Hahn, M.D. performed a non-examining assessment of Plaintiff's physical condition on behalf of the SSA, finding that Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently; sit for six hours in an eight-hour workday and stand and/or walk for a total of two; and perform unlimited pushing and pulling (Tr. 78). He found that Plaintiff was capable of occasional postural activity except for a preclusion on

---

[3]Discussion of the medical evidence is limited to the period under consideration.

the climbing of ladders, ropes, and scaffolds (Tr. 79). He found that Plaintiff should avoid concentrated exposure to temperature extremes, airborne pollutants, and hazards such as machinery and heights and avoid all exposure to vibration (Tr. 79). He found that Plaintiff required a sit/stand option allowing him to change position every 40 minutes for up to two times an hour; no standing for more than 10 minutes at a time and needed to elevate his legs 12 inches for two hours each day (Tr. 78).

Dr. Hahn cited treating records showing that Plaintiff could drive, mow the lawn, cook, and take care of his personal needs (Tr. 78). Dr. Hahn observed that his findings were consistent with the July 3, 2013 determination that Plaintiff was capable of sedentary work (Tr. 80).

### C. Vocational Expert Testimony

VE Castellano classified Plaintiff's previous work as a motor vehicle assembler as unskilled and exertionally medium (exertionally light as performed); stamping press operator, semiskilled/heavy; and assembler, unskilled/light[4] (Tr. 40). The ALJ then posed the following question, taking into account Plaintiff's age, educational level, and work experience:

> Requires work that is unskilled with one, two or three step instructions, in a non-fast rate production environment defined as involving no conveyor belt or assembly line work. Such work environments should also be low stress defined as having only occasional changes in the work setting. Can lift and or carry five pounds frequently, and 10 pounds occasionally. Could stand and or walk

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

       with normal breaks for a total of two hours in an eight hour workday. Can do so for only 15 minutes at one time. Can sit with normal breaks for a total of six hours in an eight hour workday. Could do so for only 15 minutes at one time. Such individual would be permitted to elevate his or her legs on a stool 12 inches or lower while in the sitting position. Can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for not more two-thirds of an eight hour workday. Can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for not more than two-thirds of an eight hour workday. Needs to avoid hazards in the workplace such as moving machinery and unprotected heights. Job responsibilities should not include handheld vibrating or power tools. Needs to be restricted to a relatively clean work environment, meaning stable temperatures, steady humidity and good ventilation that allows the individual to avoid concentrated exposure to dust, fumes, gases, odors and other pulmonary irritants. Can perform each of the following postural activities occasionally. Climbing stairs with handrails, balancing, stooping, crouching, kneeling and crawling but needs to avoid climbing ladders, scaffolds and ropes. And lastly such individual requires work which in addition to any regularly scheduled breaks, allows him or her to be off task up to 10 percent per eight hour workday due to the symptomatology of their impairments and or the ancillary effects of treatment for such impairments. Can such individual do claimant's past work? (Tr. 41-42).

The VE replied that the above-described individual would be unable to perform Plaintiff's past relevant work, but could perform the sedentary, unskilled work of a sorter/inspector (100,000 jobs in the national economy); assembler (75,000); and packager/stuffer (150,000) (Tr. 42). The VE stated that if hypothetical restrictions were amended to include the need to take an unscheduled break for at least one hour a day, or, the need to miss work for more than two days a month, all work would be precluded (Tr. 43). The VE concluded by stating that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*"), adding that the testimony regarding the sit/stand option, foot elevation, time off task, and absences was based on her own professional experience (Tr. 43).

### D. The ALJ's Decision

Citing the medical records, the ALJ determined that Plaintiff experienced the severe impairments of "degenerative disc disease of the lumbar spine with radicular pain; hypertension; obstructive sleep apnea []; diabetes mellitus-type II with neuropathy; fibromyalgia; history of leg ulcers; history of glaucoma, status-post laser surgery (2006); elevated cholesterol; morbid obesity; and bilateral venous stasis" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-18).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following additional limitations:

> [R]equires work that is unskilled with one, two, or three step instructions in a non-fast rate production environment defmed as involving no conveyor belt or assembly line work; requires an environment having only occasional changes in the work setting; can lift and/or carry five pounds frequently and ten pounds occasionally (from very little up to one-third of an eight-hour workday); can stand and/or walk with n01mal breaks for two hours in an eight-hour workday, but can do so for only 15 minutes at one time; can sit with normal breaks for six hours in an eight-hour workday, but can do so for only 15 minutes at one time; may elevate his lower extremities on a stool, 12 inches or lower, while sitting; can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for no more than two-thirds of an eight-hour workday; can perform activities requi1ing bilateral manual dexterity for both gross and fme manipulation with handling and reaching for no more than two-thirds of an eight-hour workday; must avoid hazards in the workplace such as moving machinery and unprotected heights; jobs responsibilities do not include the use of hand-held vibrating tools; restiicted to a "relatively clean" work environment, meaning stable temperatures, stable humidity, and good ventilation that allows the claimant to avoid concentrated exposure to dusts, fumes, gases, odors, and other pulmonary irritants; can perform each of the following postural activities occasionally: climbing stairs with handrails, balancing, stooping, crouching, kneeling, and crawling, but who needs to avoid climbing ladders,scaffolds, and ropes; requires work that, in addition to any regularly-scheduled breaks, allows the claimant to be off task up to 10 percent of an eight-hour workday due to symptoms from his impairments, and/or the ancillary effects of treatment for such impairments (Tr. 18).

The ALJ noted that the evidence for the period subsequent to the prior decision of July 3, 2013 but before December 31, 2013 showed "that there ha[d] been a change" in . . . condition since the prior decision [supporting] a slightly more restrictive [RFC]" (Tr. 19). Citing the VE's job findings, the ALJ found that although Plaintiff was unable to perform his past relevant work, he could work as a sorter/inspector, assembler, and packager/stuffer (Tr. 23, 43).

The ALJ gave "great weight" to Dr. Hahn's finding that Plaintiff could perform a limited range of sedentary work consistent with the July 3, 2013 determination (Tr. 22). However, he disagreed with Dr. Hahn's conclusion that Plaintiff's condition had not changed between July 3, 2013 and December 31, 2013 (Tr. 22). He cited an October MRI of the lumbar spine and injections administered in November and December, 2013 in support of his finding of a more restrictive RFC than found in the July 3, 2013 decision (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health*

& *Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff makes a single three-paragraph argument in favor of remand. *Plaintiff's Brief,* 9-10, *Docket #15,* Pg. ID 798. He takes issue with the RFC requiring a position change every 15 minutes, contending in effect that if he were required to stand or walk for every other 15 minute sequence over the course of an eight-hour day, it would require standing/walking for four hours every workday rather than the two of eight-hour limitation

for standing and walking generally required by sedentary work. *Id.*

Sedentary work is regularly limited to standing and/or walking for a maximum of two hours in an eight-hour workday. SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996); 20 C.F.R. §§ 404.1567(a), 416.967(a). SSR 96-9p states that where the claimant requires a sit/stand option that "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). "The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand." *Id.* "It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." *Id.*

Plaintiff's claim that the RFC crafted by ALJ D'Amato requires him to stand or walk for a total of four hours in an eight-hour workday is without merit. As to the sit/stand option, the ALJ found as follows:

> [Plaintiff] can stand and/or walk with normal breaks for two hours in an eight-hour workday, but can do so for only 15 minutes at one time; can sit with normal breaks for six hours in an eight-hour workday, but can do so for only 15 minutes at one time . . . ." (Tr. 18).

Contrary to Plaintiff's assertion, the finding that he would be unable to sit for more than 15 minutes at a time cannot be interpreted to *require* him to walk for 15 minutes of every 30. Rather, the RFC precluding sitting for more than 15 minutes at a stretch would allow Plaintiff to change from a sitting to standing position at 15 minute intervals but would allow standing/walking for anywhere from a moment *up to* 15 minutes. The RFC cannot be read to require him to stand or walk for 15 minutes with every position change, but instead, precludes him from standing/walking for *more* than a 15-minute interval at any time over the

course of the work period.

Further, the ALJ's February 15, 2017 determination is well supported and explained. As required by SSR 96-9p, the ALJ obtained vocational testimony as to the effect of a sit/stand option on the ability to perform sedentary work. *Id.* at *7. The VE's testimony and the ultimate RFC was specific as to the intervals at which Plaintiff required a change of position (Tr. 41-42). The ALJ provided an adequate explanation of his reasons for crafting a more restrictive RFC than the one found in the July 3, 2013 determination[5] (Tr. 20, 60).

Because the determination was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and did not contain procedural or substantive error, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #18] and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

---

[5]The prior RFC allowed for position changes every 40 minutes in contrast to the current determination which allows Plaintiff to change position every 15 minutes (Tr. 60).

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: January 15, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 15, 2019, electronically and/or by U.S. mail.

                                                s/Carolyn M. Ciesla
                                                Case Manager to the
                                                Honorable R. Steven Whalen